**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JUNZHOU HUANG,

                Plaintiff,

  v.

Partnerships and Unincorporated Associations
identified in Schedule A

                Defendants.

Case No.: 1:22-cv-00809

**JURY TRIAL DEMANDED**

**PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A
TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
ALTERNATIVE SERVICE
MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.  **INTRODUCTION**........................................................................................... **1**

II. **STATEMENT OF FACTS** ........................................................................ **1**

   A. Background on Plaintiff's Creations.................................................... 1

   B. Defendants' Infringing Activities ....................................................... 2

   C. The Irreparable Harm to Plaintiff........................................................ 3

III.  **ARGUMENT** .......................................................................................... 4

   A. A Temporary Restraining Order is Essential to Prevent Immediate Injury ...................... 4

   B. Standard for Temporary Restraining Order and Preliminary Injunction ......................... 6

      1. Likelihood of Success on Design Patent Infringement.       6

      2. Plaintiff is Suffering Irreparable Injury due to Loss of Exclusivity, Loss of Goodwill and Damage to Reputation.       7

      3. The Balance of Hardship Tips Sharply in Plaintiff's Favor.       9

      4. The Relief Sought Serves the Public Interest.       10

   C. The Equitable Relief Sought is Appropriate....................................... 11

      1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Design Patent is Appropriate.       11

      2. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.       12

      3. Plaintiff is Entitled to Expedited Discovery.       14

   D. Service of Process by Email is Warranted in this Case ......................... 15

   E. A Bond Should Secure the Injunction ............................................... 16

IV.  **CONCLUSION** ..................................................................................... 17

## TABLE OF AUTHORITIES

| Cases | Pages |
|---|---|
| *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) | 5 |
| *Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) | 5 |
| *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) | 5 |
| *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) | 6 |
| *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) | 6 |
| *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 684 (Fed. Cir. 2008) | 6, 7 |
| *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) | 7 |
| *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) | 7 |
| *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) | 7 |
| *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) | 7 |
| *Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv- 00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) | 7 |
| *Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) | 8 |
| *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) | 8 |
| *Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) | 8 |
| *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013) | 8 |
| *PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept.8, 2015) *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) | 8 |
| *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) | 9 |
| *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) | 9 |
| *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) | 9 |

| | |
|---|---|
| *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) | 9 |
| *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996). | 9 |
| *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) | 10 |
| *Eli Lilly & Co. V. Natural Answers, Inc.*, 233 F.3d at 469 (7th Cir. 2000) | 10 |
| *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (7th Cir. 1950) | 10 |
| *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976) | 10 |
| *Shashi, Inc. v. Ramada Worldwide, Inc.*, No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) | 10 |
| *Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) | 12 |
| *True Religion Apparel, Inc. v. Does 1-100*, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012 | 12 |
| *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) | 12 |
| *Coach, Inc., et al v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) | 12 |
| *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) | 12 |
| *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *25-26 (N.D. Ill. Mar. 27, 2013) | 12 |
| *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005) | 13 |
| *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) | 13 |
| *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) | 13 |
| *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) | 13 |
| *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) | 13 |
| *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) | 13 |
| *F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) | 13 |
| *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) | 13 |
| *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) | 14 |
| *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, | 14 |

| | |
|---|---|
| 98 S. Ct. 2380 (1978) | |
| *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980) | 14 |
| *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) | 15 |
| *In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) | 15 |
| *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n, No.* 13 C 9017, 2013 U.S. Dist. LEXIS 47248, at *27 (N.D. Ill. Mar. 27, 2013) | 16 |
| *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989) | 16 |
| *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999) | 16 |
| *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015) | 17 |

Plaintiff Junzhou Huang moves this Honorable Court for a temporary restraining order, including a temporary injunction, a temporary asset restraint, expedited discovery, and alternative service against defendants, the Partnerships and Unincorporated Associations identified on Schedule A ("Defendants"), and in support thereof states as follows:

## I.       INTRODUCTION

Plaintiff brings this action against the Defendants for federal patent infringement.

Defendants are knowingly and intentionally advertising, distributing, and selling infringing products in this district and throughout the U.S. using e-commerce stores on third party marketplace platforms under seller identification names listed on Schedule "A" (the "Defendant Internet Stores"). Defendants' unlawful activities infringe plaintiff's intellectual property rights and deprive plaintiff of control over its intellectual property.

Defendants' unlawful activities cause plaintiff ongoing irreparable harm. A temporary restraining order should issue enjoining Defendants' illegal activities. The Defendants' illegal profits should be frozen pursuant to the court's inherent powers to prevent Defendants from hiding or transferring their ill-gotten assets beyond the jurisdiction of this Court. To preserve the disgorgement remedy, plaintiff seeks an *ex parte* order restraining Defendants' assets, including funds transmitted through payment processors for the platforms on which Defendants engage in their illegal activities.

## II.       STATEMENT OF FACTS

## A.       BACKGROUND ON PLAINTIFF'S CREATIONS

1.       Plaintiff Junzhou Huang is Chinese national residing within the People Republic of China.  Plaintiff is the owner of U.S. Design Patent No. D912,763 (the "'763 Patent") titled "Filter For Pet Fountain."  Huang's Declaration, at ¶ 5 (**Exhibit 1**).

2.       Plaintiff's products, namely, fountain filters for pet fountain, are sold or offered for sale

1

via online retailers such as Amazon, which practice the '763 Patent. Plaintiff has established its products as the first to market and has an established reputation and quality reviews. *Id.* at ¶ 7.

3.     Plaintiff has sold its patented Filters for Pet Fountain through stores such as Wonder Creature  (ASIN: B07MBC5LQ4) at Amazon.com. *Id.*

4.     Plaintiff's fountain filters for pet fountain have been well received by customers who desire replacement filters for their pet fountain devices. One of the stores, https://www.amazon.com/stores/The+Best+Pet+Consultant/page/F05F4F94-4DA0-41E7-9E0D-DE2CB5468DC4?ref_=ast_bln, has received 281 reviews and garnered averaging 4.7 out of 5 stars as of the date of the filing of the Complaint. *Id.* at ¶ 8.

5.     Plaintiff is the lawful owner of all rights, title, and interest in the '763 Patent. The '763 Patent was duly issued on March 9, 2021. *Id.* at ¶ 5.

6.     Plaintiff has not granted a license or any other form of permission to Defendants with respect to the patent design or the '763 Patent.

7.     Plaintiff's Design Patent relates to ornamental designs for fountain filters with packages evenly distributed thereon. *Id.* at ¶ 6. The Plaintiff's Design Patent is valid. Id. at ¶ 4. Plaintiff never authorized Defendants to import, make, use, or sell unauthorized goods using Plaintiff's Design Patent. *Id.* at ¶ 9.

## B.     DEFENDANTS' INFRINGING ACTIVITIES

8.     Plaintiff's Design Patent was never assigned or licensed to any of the Defendants. *Id.* Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale goods ("Defendants' Goods"). *Id.* at ¶ 10.

9.     Plaintiff investigated the promotion and sale of infringing products by Defendants to obtain payment account information for funds paid to Defendants for the sale of infringing products. *Id.* at ¶ 11. These investigations established that Defendants use Amazon, Wish, eBay, AliExpress,

Alibaba to sell Infringing Products from foreign countries such as China to consumers in the United States. *Id*. at ¶ 12. Plaintiff accessed Defendants' Internet based e-commerce stores operating under their seller identification names including but not limited to Amazon.com, Wish.com, eBay.com, AliExpress.com, and Alibaba.com. Id. at ¶ 13. Plaintiff viewed Infringing Products using Plaintiff's Design Patent with each e-commerce store. (*Huang Decl*. at ¶14, *Exhibit* 1). Plaintiff placed test orders from certain Defendants via their e-commerce stores operating under the Seller IDs for the purchase of various products all bearing infringements of Plaintiff's Design Patent. (*Huang Decl*. at ¶15, *Exhibit* 1).

10.    Plaintiff captured detailed web pages for each defendant reflecting each infringing product bearing infringements of Plaintiff's Design Patent. (*Huang Decl.* at ¶16, *Exhibit* 1).

11.    Plaintiff or someone under her supervision personally analyzed each of the Infringing Websites and determined that Infringing Products were being offered for sale to residents of the United States. (*Huang Decl*. at ¶17, *Exhibit* 1).

12.    A comparison of the Plaintiff's Design Patent to the Defendants' Goods reveals that the Defendants' Goods infringe the Plaintiff's Design Patent. (*Huang Decl.* at ¶18, *Exhibit* 2).

## C.    THE IRREPARABLE HARM TO PLAINTIFF IN THE FORM OF DAMAGE TO REPUTATION, LOSS OF GOODWILL, AND LOSS OF EXCLUSIVITY NOT COMPENSABLE BY DAMAGES ALONE

13.    Defendants are selling their infringing goods to consumers within this district and throughout the United States. (*Huang Decl*. at ¶¶10, 19) Defendants are responsible for thousands of Infringing Products sold. *Id*. at ¶20. Each sale results in a direct loss to Plaintiff. *Id*. at ¶21.

14.    As the illegal marketplace for Plaintiff's products grows on the Internet, the legitimate marketplace for authentic Plaintiff products shrinks. *Id*. at ¶22. Monetary damages cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's reputation and goodwill. *Id*. at ¶26. Furthermore, monetary damages

are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to our reputation and goodwill by acts of infringement. *Id.* at ¶25.

15. Plaintiff's goodwill and reputation are irreparably damaged due to loss in brand confidence. *Id.* at ¶23. Plaintiff is further irreparably harmed because Defendants take away Plaintiff's ability to control the nature and quality of Infringing Products. *Id.* at ¶24.

16. Loss of quality control over goods is neither calculable nor precisely compensable. *Id.* at ¶25.

17. Plaintiff is further irreparably damaged due to a loss of exclusivity. Plaintiff's extensive marketing and innovative patented designs are aimed at growing and sustaining sales. When Defendants sell or offer for sale Infringing Products without authorization, the exclusivity of the Plaintiff products, as well as Plaintiff's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales. *Id.* at ¶28.

### III. ARGUMENT

**A. A Temporary Restraining Order is Essential to Prevent Immediate Injury**

A temporary restraining order may be granted without written or oral notice where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Entry of a TRO is warranted here. Plaintiff has shown Defendants are wrongfully infringing on plaintiff's design patent.

The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the '763 Patent and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the

jurisdiction of this Court. *Huang Decl.* at ¶ 29. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C.§ 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products featuring the '763 Patent. See *Huang Decl*. at ¶ 10; see, e.g., *Christian Dior Couture, S.A. v. Lei Liu et al*., 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc*., 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## B.      Standard for Temporary Restraining Order and Preliminary Injunction

To obtain a TRO or a preliminary injunction, a party must establish (1) a substantial

likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. See *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); see also *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all of the relevant factors.

**1.  Likelihood of Success on Design Patent Infringement.**

Likelihood of success on plaintiff's design patent infringement claims is shown here. Plaintiff owns all substantial rights in the U.S. Design Patent No. D912,763 (the "'763 Patent") embodying ornamental designs for pet fountain filters. (*Huang Decl.* ¶ 18.)

A patent is presumed valid. 35 U.S.C. § 282. Design patent infringement occurs if, in the eye of an ordinary purchaser, giving such attention as a purchaser usually gives, two designs are so similar that the purchaser, familiar with the prior art, would be deceived by the similarity between the claimed design and the accused designs, inducing him to purchase one supposing it to be the other. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 684 (Fed. Cir. 2008) (en banc) (Announcing the so-called "three-way test" comparing the patent, the accused device, and the closest prior art.)

Attached as **Exhibit 2** is a chart showing figure 1 of the '763 Patent compared with photographs of different products received or offered for sale by different defendants for purposes of comparison. The Infringing Products sold on Defendant's stores are virtually identical to the patented design such that an ordinary observer would be deceived into thinking that the Infringing Product was the same as the '763 Patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008).

Defendants' products are not licensed or authorized in any way as Plaintiff is "the sole owner of the '763 Patent and no entity has any rights or license to use or practice the '763 Patent" besides Plaintiff. *Huang Decl.* at ¶ 9. Accordingly, Plaintiff is likely to establish a *prima facie* case of design infringement.

### 2.     Plaintiff is Suffering Irreparable Injury due to Loss of Exclusivity, Loss of Goodwill and Damage to Reputation.

Irreparable injury should be presumed because Plaintiff has established infringement and validity of the '763 Patent. *See, e.g., Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001) (when moving party makes "clear showing" of validity and infringement "it is entitled to a rebuttable presumption of irreparable harm"). A plaintiff need not only show that an irreparable harm is likely in order for an injunction to issue. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In this case, in the absence of an injunction, Plaintiff will suffer irreparable harm due to loss of goodwill and reputation. *Huang Decl*. at ¶23. Such injury is grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); s*ee also Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv- 00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's

importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of an injunction Defendants' infringement of the '763 is likely to cause consumer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. *Huang Decl.* at ¶23. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014). (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the '763 Patent in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept.8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016). ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Given that Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary

judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). *Huang Decl.* at ¶ 31.

### 3. The Balance of Hardship Tips Sharply in Plaintiff's Favor.
 The balance of equities tips decisively in Plaintiff's favor.

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the patent owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiff' patent." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

Defendants' trade in infringing product leads to their profits while causing Plaintiff to suffer substantial losses and damage to its reputation. (*Huang Decl.* at ¶21.)

Moreover, Defendants will suffer no legitimate hardship because Defendants have no right to carry on their infringing activities. In addition, any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted. Defendants took a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931

(Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

### 4. The Relief Sought Serves the Public Interest.

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal patent law. The public is currently under the false impression that Defendants are operating their internet stores with Plaintiff's approval and endorsement. If, somehow, someone gets injured or harmed by these infringing products, there is no way a consumer can find the Defendants from their fictitious online selling accounts, not to mention to hold the Defendants accountable because Defendants can easily move their assets off shore. An injunction serves the public interest in this case "because enforcement of the patent laws prevents consumer confusion." *Eli Lilly & Co. V. Natural Answers, Inc.*, 233 F.3d at 469 (7th Cir. 2000).

Federal courts have long held that "the patent laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a patent owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv- 00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the

source of the goods and services offered by Defendants, or as to the identity of the owner of patent and service marks used in connection with those goods and services. Unless Defendants' unauthorized use of Plaintiff's design patent is enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## C.     The Equitable Relief Sought is Appropriate

In addition to this Court's inherent authority to issue injunctive relief, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### 1.     Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Design Patent is Appropriate.

In relief, Plaintiff seeks a temporary restraining order against Defendants, enjoining them from making, using, selling, or offering for sale the infringing products and other products which infringe upon Plaintiff's patented design.

Plaintiff also requests an order prohibiting transfer of the Seller IDs to preserve the status quo. Defendants should be prohibited from transferring use or control of the Seller IDs because once they become aware of litigation against them, they can easily change ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other

seller identification names, and transfer assets and ownership of the Seller IDs. *Huang Decl.* at ¶ 29. This would thwart the Court's ability to grant meaningful relief and upend the status quo.

An order prohibiting defendants from transferring their e-commerce stores poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford plaintiff full relief.

### 2. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

Plaintiff seeks a temporary asset freeze in order to ensure the availability of permanent relief given the likelihood that Defendants will simply transfer their assets in an attempt to evade any judgment against them entered by this Court.

Plaintiff is entitled to an asset freeze because it has demonstrated likelihood of success on the merits, as these types of relief have been found wholly appropriate in similar cases by Courts in this District. *See, e.g., Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (Dow, J.) (granting *ex parte* application for temporary restraining order including the transfer of domain names, freezing of Defendants' financial accounts, and service of process by electronic publication and electronic mail); *True Religion Apparel, Inc. v. Does 1-10*0, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (Coleman, J.) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Coach, Inc., et al v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) (Lee, J.) (same); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *25-26 (N.D. Ill. Mar. 27, 2013) (same).

The freezing of assets is also appropriate in this case. Without an asset seizure in place, Defendants are highly likely to simply disappear into the night, leaving Plaintiff and this Court powerless to redress their unlawful acts, and in such cases, numerous courts in this circuit have held that an asset seizure is warranted. *Huang Decl.* at ¶ 30.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a patent infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move its ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper. Asset freeze orders are authorized without notice to defendants where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained. See *F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.,* 2000 WL

715601 (N.D. Ill. 2000) (granting *ex parte* TRO restraining assets).

As Defendants' businesses are conducted anonymously on the Internet, Defendants may easily secret or transfer their assets. Defendants' blatant violations warrant an *ex parte* order restraining transfer of their ill-gotten assets.

### 3. Plaintiff is Entitled to Expedited Discovery.

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. Id. (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

14

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with patent owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**D.    Service of Process by Email is Warranted in this Case**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff also requests that the Court enter an order permitting it to serve the summons, complaint, proposed temporary restraining order, and notice of any hearing the Court may schedule on Defendants by email.

First, service of process by email is warranted for Defendants listed on schedule A, given that Defendants are located in China and have no apparent presence in the United States. Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g., In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially

fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the process of serving Defendants with the relevant documents by international mail (and through the Hague Convention) would likely take a minimum of several months. If the Court grants Plaintiffs' request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry–not to exceed 14 days–that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Secondly, service of process by email for Defendants is appropriate and necessary because Defendants, on information and belief: (1) rely primarily on electronic communications to communicate with its customers, demonstrating the readability of this method of communication and (2) Plaintiffs are unable to determine the exact physical whereabouts or identities of Defendants. *See, e.g., Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n, No.* 13 C 9017, 2013 U.S. Dist. LEXIS 47248, at *27 (N.D. Ill. Mar. 27, 2013) (finding service by email and electronic publication appropriate under similar circumstances). As such, Plaintiffs respectfully request this Court's permission to serve Defendants via email. Plaintiff expects to obtain the email addresses from Amazon.com with the discovery requested above.

**E.     A Bond Should Secure the Injunction**

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Due to the strong and unequivocal nature of Colorful Days's evidence of counterfeiting, and infringement. Colorful Days respectfully requests that this

Court require Colorful Days to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## IV.    CONCLUSION

In view of the foregoing, plaintiff respectfully requests this Court grant its *ex parte* application and enter a temporary restraining order as to Defendants in the form submitted herewith and schedule a hearing on plaintiff's motion for a preliminary injunction before the expiration of the temporary restraining order.

Additionally, in the event the application is granted, plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically or by remote video at the hearing on plaintiff's motion for a preliminary injunction, in accordance with the administrative orders of this court.

Furthermore, due to the time provisions of a temporary restraining order, in the event the application is granted, plaintiff respectfully requests the Court provide a copy of the temporary restraining order to plaintiff's counsel via e-mail at shenwang@archlakelaw.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

DATED: February 21, 2022                     Respectfully submitted,

/s/ Zhangyuan Ji
Shen Wang (ILND Bar No. 6314224)
Hao Tan (ILND Bar No. 6314119)
Haoyi Chen (*pro hac vice* application to be sought)
Zhangyuan Ji (ILND Bar No. 6336107)
ARCH & LAKE LLP
203 North LaSalle Street

17

Suite 2100
Chicago, Illinois 60601
636-236-5390 (Shen Wang)
312-375-9408 (Hao Tan)
346-335-9890 (Haoyi Chen)
773-680-9572 (Zhangyuan Ji)
shenwang@archlakelaw.com
haotan@archlakelaw.com
haoyichen@archlakelaw.com
ellen@archlakelaw.com

*Counsel for Plaintiff*