# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHD MARKETING, INC., and
E-HOSE TECHNOLOGIES, LLC,

        Plaintiffs,

        v.

CLOUD COMMERCE SYSTEMS LIMITED,

        Defendant.

No. 15 CV 4702

Judge Manish S. Shah

## ORDER

Defendant's motion to vacate the temporary restraining order [40] is granted in part, denied in part. Plaintiff's oral motion to extend the temporary restraining order is granted in part. The TRO is modified and extended to June 30, 2015. Enter modified temporary restraining order.

## STATEMENT

Plaintiffs obtained an ex parte temporary restraining order against the defendant, enjoining it from selling counterfeit products bearing plaintiffs' trademarks. The TRO also directed PayPal and any financial institutions to restrain defendant's accounts. The exigency that warranted the restraint of assets was the concern that the Hong Kong-based defendant would, if given notice, move any proceeds from alleged counterfeit sales offshore and defeat the goals of an accounting remedy. Defendant now moves to dissolve the TRO, and it takes particular issue with the restraint of its assets.

I remain persuaded that plaintiffs have demonstrated a reasonable likelihood of success on the merits. Based on the submissions to date, defendant was not authorized to sell plaintiffs' goods and it sold infringing, counterfeit products (including at wholesale quantities) on its website. Plaintiffs report that there are a handful of counterfeit products for sale on defendant's website. Such products are likely to confuse consumers because they appear to be authentic and therefore they mislead consumers as to the true source of the products. Injunctive relief is appropriate because the confusion and harm to plaintiffs' marks cannot be adequately remedied at law—the intrusion into plaintiffs' ability to control their intellectual property is a reputational, irreparable harm. *See Re/Max N. Cent., Inc.*

*v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001). With respect to an injunction prohibiting infringing activity, the balance of harms favors plaintiffs because the defendant has no interest in participating in infringement, *see* Yang Declaration, [41-1] ¶¶ 7–9, and the public (the consumer) is served by the cessation of counterfeiting.*

The asset freeze is a different matter. Defendant uses a PayPal account to process almost all of its sales, and the TRO froze that account. *Id.* ¶ 15. The point of the freeze is to preserve the accounting of defendant's profits attributable to the counterfeiting of plaintiffs' goods (not to preserve assets for a later award of damages). *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 5265727, at *4–5 (S.D.N.Y. Oct. 24, 2012); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999). Defendant has submitted a declaration from one of its directors swearing that defendant has identified approximately $1,100 in sales of goods potentially infringing of plaintiffs' marks. [41-1] ¶ 13. Defendant says its daily sales revenue in the United States is between $30,000 and $50,000, that the U.S. represents about 30% of its worldwide sales, and that the goods sold on its website include a wide array of gadgets. *Id.* ¶¶ 3–5, 8. Essentially, the accused products represent a tiny fraction of defendant's business. Plaintiffs are willing to reduce the asset freeze to $100,000, but argue that defendant must produce more evidence that its assets are not the proceeds of counterfeiting activities in order to lift the freeze entirely. *See North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 WL 838993, at *3–4 (S.D.N.Y. Mar. 30, 2006).

Defendant's evidence is sufficient to demonstrate that the balance of harms has shifted and now favors defendant with respect to the asset freeze. There is no evidence that defendant will move its sales processing offshore and stop using PayPal, or some other U.S.-based payment processor. The record now adequately establishes that defendant has continuing, legitimate sales in the United States such that it will have a substantial U.S.-based cash flow for the duration of this litigation. Given the general sales figures attested to by the director, it is likely that any profits defendant may have earned from sales of counterfeit goods will be available (in a U.S.-based account) for disgorgement in the event judgment is entered against it. Moreover, the number of sales of plaintiffs' products is relatively small; a restraint on defendant's cash flow, where defendant appears to engage in legitimate transactions, causes a meaningful harm to defendant. I am no longer persuaded that the balance of

---

* I agree with defendant that paragraph g of the TRO (forbidding defendant from using any website that is the means by which defendant could sell counterfeit products) is overbroad in light of the evidence submitted by defendant that it engages in web-based sales that are not infringing of plaintiffs' marks. Since that paragraph prohibits defendant from using a website that could potentially be used to sell counterfeit products, it would require defendant to shut down its entire website. Such relief is unnecessary at this time.

hardships warrants freezing defendant's assets to preserve a remedy that will be available without a freeze.

Given the nature of defendant's business, there remains an ongoing risk that sales of counterfeit goods will occur on its site. Therefore, good cause has been shown to extend the TRO. The order is modified to lift the asset freeze. The requirements that PayPal and other financial institutions provide information to plaintiffs shall remain in place during the extended time period of the TRO because those provisions are necessary to preserve the accounting remedy but will not impede defendant's ability to conduct legitimate business.

Enter modified temporary restraining order.

ENTER:

Date: 6/11/15

Manish S. Shah
U.S. District Judge

3